IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STONE STREET ASSET TRUST, )
)
    Plaintiff, )
)
v. ) Civ. No. 10-541-SLR
)
ARCHIE BLUE and )
OBEY FINANCIAL GROUP, INC., )
)
    Defendants. )

R. Karl Hill, Esquire of Seitz Van Ogtrop & Green, P.A., Wilmington, Delaware. Counsel for Plaintiff.

Ericka F. Johnson, Esquire of Womble Carlyle Sandridge & Rice, PLLC, Wilmington, Delaware and Bradley L. Drell, Esquire and Michael J. Floyd, Esquire of Gold, Weems, Bruser, Sues & Rundell, Alexandria, Louisiana. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: August 1, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Stone Street Asset Trust ("Stone Street Trust") instituted the case at bar, seeking a declaration of ownership to property located within the district. Currently before the court is defendant Obey Financial Group's ("Obey's") motion to dismiss or, in the alternative, stay proceedings in federal court. Obey moves for the court to abstain from exercising its subject matter jurisdiction pending the resolution of a proceeding currently ongoing in Louisiana. Because both parties have applied the incorrect abstention doctrine, the court finds, *sua sponte,* that Stone Street Trust's claims arise under the Declaratory Judgment Act ("DJA") and grants the motion to stay the action.

## II. BACKGROUND

On May 8, 1997, defendant Archie Blue ("Blue"), a citizen of Louisiana, won a casino jackpot prize in the total amount of $5,204,748.00, consisting of 20 annual payments ("Prize Payments"). (D.I. 1 at ¶ 2) On April 26, 2006, Blue and Stone Street Capital, Inc. ("Old SSC") entered into a contract wherein Blue sold five years of future Prize Payments to Old SSC ("Assigned Payments"). (*Id.* at ¶ 8; D.I. 11, ex. B1) On July 20, 2007, Blue and Stone Street Capital, LLC ("New SSC") entered into a contract wherein Blue sold three additional Prize Payments to New SSC ("Additional Assigned Payments"). (D.I. 1 at ¶ 9; D.I. 11, ex. B1) New SSC assigned the rights under the contract regarding the Additional Assigned Payments to Stone Street Trust. (D.I. 1 at ¶ 9)

On September 6, 2007, Obey, a Louisiana corporation, obtained a monetary judgment against Blue in the Ninth Judicial District Court for the State of Louisiana.[1] (D.I. 12, ex. C)

On September 13, 2007, New SSC obtained a court order from the Second Judicial District Court, Washoe County, Nevada approving, ordering, and declaring that Stone Street Trust was the owner of the Assigned Payments and Additional Assigned Payments. (D.I. 1 at ¶ 11; D.I. 1, ex. A) Stone Street Trust protected its security interest in the Additional Assigned Payments by filing a UCC-1 financing statement in Louisiana that reflects the purchase and ownership of the Prize Payments. (D.I. 1 at ¶ 14; D.I. 1, ex. B) According to Stone Street Trust, at the time of the transfer, Blue was solvent and the Prize Payments were free of any liens or encumbrances. (D.I. 1 at ¶ 13)

On April 22, 2010, Obey filed a revocatory action in the Ninth Judicial District Court for the State of Louisiana against Stone Street Trust's alleged agent Sydney Grider ("Grider"), Blue, and "Stone Street," which is a non-existent entity (the "Louisiana action"). (D.I. 8 at 2) Obey filed a third amended and supplemental petition properly naming Stone Street Trust as a defendant on October 26, 2010.[2] (D.I. 12 at 2; D.I. 12, ex. A at ¶ 1) The Louisiana action is ongoing. (D.I. 8 at 2)

---

[1] Obey alleges it was Blue's financial planner after Blue's lottery win. (D.I. 8 at n.3)

[2] Obey did not correct the Louisiana action pleadings until after Stone Street Trust noticed that Obey had named a non-existent entity as a defendant. (D.I. 11 at 4)

On June 21, 2010, Stone Street Trust, a separate sub-account of a Delaware business trust, filed the present litigation seeking a declaratory judgment quieting title to the Additional Assigned Payments. (D.I. 1; D.I. 11, ex. B2)

## III. APPLICABILITY OF THE DJA

Although, Stone Street Trust does not specifically cite to the DJA,[3] for all intents and purposes, Stone Street Trust has requested in its complaint that the court render a declaratory judgment, i.e., quieting title to property and declaring said property to be free of any liens or encumbrances. (D.I. 1 at ¶ 17) See *Keiser Land Co., Inc. v. Naifeh*, Civ. No. 09-1253, 2010 WL 3220642, at *1 (W.D. Tenn. Aug. 13, 2010) (finding that, even though plaintiff did not explicitly cite to the statute in its complaint, plaintiff's requests that the court declare it owned real property invoked the DJA). Notably, Obey cites to the DJA numerous times throughout its memorandum of law in support of its motion to stay (D.I. 8), and nowhere in its answer does Stone Street Trust explicitly deny that its suit would fall under the DJA.[4] (D.I. 11)

### A. Quiet Title Proceedings Arise Under the DJA

The right to quiet title or remove cloud upon personal property arises under the DJA. See 105 A.L.R. 291. In the Third Circuit, the majority of DJA cases arise from

---

[3] 28 U.S.C. § 2201(a) provides in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

[4] Stone Street Trust obliquely acknowledges that its suit would arise under the DJA by asserting that: "this action is not simply a declaratory judgment action . . . ." (D.I. 11 at 9)

4

insurance liability disputes;[5] however, other claims invoke the DJA as well. Declaratory proceedings regarding the construction and interpretation of a written instrument, such as contracts, ordinances, statutes, wills, and trusts, are "particularly appropriate" for remedy under the DJA. *See Stern & Co. v. State Loan & Fin. Corp.*, 205 F. Supp. 702, 710 n.6 (D. Del. 1962) (citing *Motor Terminals v. Nat'l Car. Co.*, 92 F. Supp. 155, 161 (D. Del. 1949)); *see also Lehigh Coal & Nav. Co. v. Cent. R. of N.J.*, 33 F. Supp. 362, 365 (E.D. Pa. 1940). According to the Third Circuit, "[t]he objectives of the Federal [DJA] are 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'" *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (1974) (quoting *E. Edelmann & Co. v. Triple-A Speciality Co.*, 88 F.2d 852, 854 (7th Cir. 1937)). Therefore, when a plaintiff "only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action . . . ." *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (citing *Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000)).

---

[5] *See, e.g., State Auto Ins. Co. v. Summy*, 264 F.3d 131, 135 (3d Cir. 2001) (finding that the district court should have declined to hear an insurance action because there was a pending state case involving the same issues); *Dixon v. Progressive N. Ins. Co.*, Civ. No. 08-1010, 2008 WL 4072816, at *1 (W.D. Pa. Aug. 27, 2008) (declining to exercise jurisdiction over insurance benefits claim); *Am. Gen. Life Ins. Co. v. Mann*, Civ. No. 09-434, 2011 WL 446048, at *6 (D. Del. Feb. 3, 2011) (declining to stay the case after finding the *Colorado River* exceptional circumstances doctrine does not apply to declaratory judgment action pertaining to insurance claims).

While there is no on-point caselaw from any court in the Third Circuit analyzing whether a quiet title action falls under the DJA,[6] district courts in other circuits have verified that it would. *See Keiser Land*, 2010 WL 3220642, at *1. The lack of caselaw in this circuit designating that a quiet title action would fall under the DJA does not preclude the court from construing the case at bar as such. First, the property at issue are the Additional Assigned Payments, which are assigned to a trust. The construction of trusts is one of the areas within the purview of the DJA. *See Lehigh Coal*, 33 F. Supp. at 365.

The present litigation relates to the contract Blue entered into with New SSC wherein Blue assigned the Additional Assigned Payments to Stone Street Trust. Contract construction is also a type of claim that fits squarely within the reaches of the DJA. *See id.* Indeed, it is apparent from its exhibits that Stone Street Trust will attempt to legitimize the contract between New SSC and Blue and confirm its title to the Additional Assigned Payments.[7] Because Stone Street Trust seeks only a declaration of rights and no coercive relief, the DJA is the applicable law. *See City of Las Cruces*, 289 F.3d at 1181.

---

[6] In the Third Circuit, only one case interprets the interaction of a quiet title action and the DJA; however, in that case, the party instituting the quiet title action was the United States government. *See Aqua Bar & Lounge, Inc. v. U.S. Dept. of Treasury Internal Revenue Serv.*, 539 F.2d 935, 937 (3d Cir. 1976).

[7] Stone Street Trust claims that when it contracted with Blue for the rights to the Additional Assigned Payments, Blue was financially stable and the property was free of any liens or encumbrances. (D.I. 1 at ¶ 13) Obey argues that a week before Stone Street Trust obtained a declaration that the Additional Assigned Payments belong to it, Obey obtained a monetary judgment against Blue, rendering any contracts between Blue and third parties after that date void under Louisiana law. (D.I. 12, ex. C; D.I. 8 at 3; D.I. 8, ex. A at ¶ 20)

6

## B. Stone Street Trust's Complaint Satisfies the Prerequisites of a DJA Claim

Since the enactment of the DJA, caselaw has developed to outline when a claim arises under the DJA. In cases of "actual controversy," with the exception of federal taxes, the federal courts have the ability to declare such rights as outlined above. *See* 172 A.L.R. 847. To determine whether an actual controversy arises, the district court must ascertain whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (citation omitted). The Third Circuit has elaborated on the standard: "The fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (1987).

In the case at bar, it is clear that Obey and Stone Street Trust have adverse legal interests because both parties are attempting to claim ownership over the same property.[8] Certainly, the case creates a substantial controversy as Obey has already instituted the Louisiana action in an indirect effort to secure title to the Additional Assigned Payments. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 490 (3d Cir. 1958) (there need not be a direct threat of litigation to invoke the DJA). Additionally, it is evident from Stone Street Trust's complaint that it

---

[8] Stone Street Trust looks for this court to issue a declaratory judgment quieting title on the Additional Assigned Payments. Obey seeks to have the Louisiana court void the sales agreement between Blue and New SSC and mandate that Blue pay it a monetary judgment therefrom.

does not seek advice regarding the quieting of title but is seeking affirmative action from the court in an effort to stop the Louisiana action from continuing to judgment, which could create a res judicata scenario. See *Zimmerman*, 834 F.2d at 1170. Because there is a substantial controversy between Obey and Stone Street Trust, Stone Street Trust's complaint satisfies the prerequisites of a DJA claim.

### C. When a DJA Claim is Pending in a Federal Court, the Correct Abstention Doctrine is the *Brillhart* Abstention Doctrine

Both Obey and Stone Street Trust misstate the law regarding a district court's ability to abstain from exercising jurisdiction under the DJA. The *Colorado River* abstention doctrine is available to courts when there is simply a parallel proceeding pending in state court. See *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976) (finding that when a case does not arise under the DJA, and absent exceptional circumstances, a court must employ its "unflagging obligation" to exercise jurisdiction). However, when there is a parallel proceeding in state court **and the case arises under the DJA**, the *Brillhart* abstention doctrine controls. See *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942).

After the Supreme Court released its decision in *Colorado River*, there was some confusion in the legal community regarding its effect on *Brillhart*.[9] However, all confusion was laid to rest after the Court decided *Wilton v. Seven Falls Co.*, which reaffirmed *Brillhart*'s holding. See 515 U.S. 277, 282 (1995) ("*Brillhart* makes clear that

---

[9] For more information on the doctrinal discussion which took place after the Court released its decision in *Colorado River*, see Grace M. Giesel, *The Expanded Discretion of Lower Courts to Regulate Access to the Federal Courts After Wilton v. Seven Falls Co.: Declaratory Judgment Actions and Implication Far Beyond*, 33 HOUS. L. REV. 393, 394-96.

8

district courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). The pivotal difference between the two doctrines is the presence or absence of the DJA in the underlying claim. The Supreme Court treats the two doctrines differently because of "distinct features" of the DJA which the Court views as "an enabling Act," that confers "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.*

The *Brillhart* and *Colorado River* doctrines are two distinct doctrines. Thus, the court finds that the proper analysis is the *Brillhart* abstention doctrine, not the *Colorado River* exceptional circumstances abstention doctrine. *See Am. Gen. Life Ins. Co. v. Mann*, Civ. No. 09-434, 2011 WL 446048, at *2 n.2 (D. Del. Feb. 3, 2011) (holding that because the parties incorrectly analyzed a DJA issue under the *Colorado River* doctrine, it could, *sua sponte*, rule that the correct abstention doctrine is *Brillhart*).

## IV. STANDARD OF REVIEW

When a claim arises under the DJA, district courts have discretionary jurisdiction, but are "under no compulsion to exercise it." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (citing *Brillhart*, 316 U.S. at 495). When a court faces a DJA claim, it has much broader discretion regarding exercising its jurisdiction than that which is afforded under *Colorado River*. *See U.S. v. Com. of Pa., Dept. Of Envtl. Res.*, 923 F.2d 1071, 1074 (1991) (3d Cir. 1991) ("[T]he traditional discretion of the federal courts to decide whether to hear declaratory judgment cases is not limited by *Colorado River* . . . but will be subject to the 'liberal interpretation' to be accorded the [DJA].") (quoting

*Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1223 (3d Cir. 1989)). Further, the Court has stressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. If the district court allowed for the declaratory action to proceed, it could be engaging in "gratuitous interference." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495)).

Drawing upon *Brillhart* as a foundation, the *Wilton* court laid out the basic test a district court must use when analyzing a DJA claim, "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." 515 U.S. at 282. The Supreme Court has enumerated factors a district court ought to consider while construing the test, including the scope of the state court proceeding, available state court defenses, whether the claims of all interested parties can be settled in the state proceeding, whether the necessary parties have been joined, and whether such parties are amenable to process in the state court. *See Brillhart*, 316 U.S. at 495; *see also Mann*, 2011 WL 446048, at *3.

In DJA actions involving both insurance and interpleader cases,[10] the Third Circuit has outlined additional factors for consideration. In the insurance arena, the

---

[10] "The federal interpleader statute, 28 U.S.C. § 1335 (1993), is a remedial device which enables a person holding property or money to compel two or more persons asserting mutually exclusive rights to the fund to join and litigate their respective claims in one action." *NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 374 (3d Cir. 1995) (citing 3A J. Moore & J. Lucas, Moore's Federal Practice § 22.02[1] (2d ed. 1994)).

10

Third Circuit has suggested that district courts embrace "a general policy of restraint when the same issues are pending in a state court," with a view to avoiding duplicative litigation. *Glenbrook Estates, Inc. v. Wausau Ins. Cos.*, Civ. No. 07-678, 2007 WL 4259993, at *5 (D.N.J. Nov. 30, 2007); *see also Mann*, 2011 WL 446048, at *3. In the interpleader case of *NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 382 (3d Cir. 1995), the Third Circuit applied the broad discretionary standard set forth in *Brillhart*, as opposed to the narrow *Colorado River* doctrine, and directed that

> [t]he district court should determine, as a threshold matter, whether the state court action is indeed 'parallel' . . . . [s]ince the very basis for deference is the avoidance of needless duplicative litigation . . . . [T]he court should evaluate which forum will protect the [plaintiff] more effectively while providing the [defendants] with the more efficient, convenient, and expeditious vehicle to settle their dispute . . . . We would also expect the district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that procedural fencing, forum shopping or gamesmanship is not rewarded. We do not intend the considerations we have enunciated to be comprehensive, and leave it to the district court to consider any other factors it finds relevant.

*Mann*, 2011 WL 446048, at *3 (citing *NYLife*, 72 F.3d at 382-83).

## V. DISCUSSION

The court's initial inquiry is whether the concurrent actions are parallel. *See id.* Parallel actions are those which "generally involve the same parties and claims." *Id.* (citing *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997)). The pending actions do not need to be identical; however, they must be "substantially similar." *Id.* (citing *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D. Del. 1987)).

Obey argues, *inter alia*, that the present litigation and the Louisiana action are parallel to one another. The Louisiana action revolves around Blue's financial

11

insolvency. In its Louisiana complaint, Obey alleges that, after Blue contracted to sell the Additional Assigned Payments, his solvency was questionable.[11] (D.I. 12, ex. A at ¶ 14) Obey asks the Louisiana court to nullify and revoke the sales agreement between Blue and New SSC and order Blue to pay Obey partial satisfaction of its judgment out of said revocation. (D.I. 12, ex. A at ¶ 20) The litigation at bar pertains to Stone Street Trust's attempt to confirm title to the Additional Assigned Payments.

The Louisiana action and the present action are similar enough to be considered parallel because essentially the same parties are litigating over substantially the same property. In addition, Stone Street Trust's attempts to differentiate the proceedings by arguing that one of its fellow defendants from the Louisiana action, Grider, is not a party to the action at bar is unpersuasive. (D.I. 11 at 4) Stone Street Trust explicitly denies that Grider ever acted as an agent for, or was employed by, Stone Street Trust, rendering his absence from the caption above as not surprising. (*Id.*) While the legal theories of the two actions are not the same, the ultimate goals of each are: both seek title over the Additional Assigned Payments. If the present action were to go forward, a judgment in this court could run counter to the Louisiana action, or vice versa, creating inconsistent results regarding the same property.

The court further finds that the issues in this action "can better be settled" in Louisiana rather than in this district. See *Mann*, 2011 WL 446048, at *3 (citing *Brillhart*, 316 U.S. at 495). While the trust itself is located within the district, the contract in

---

[11] According to Obey, Blue had liabilities that included his Obey judgment, indebtedness secured by mortgage, and Internal Revenue Service tax liabilities. (D.I. 12, ex. A at ¶ 14)

dispute was executed in Louisiana. Thus, Louisiana law controls.[12] Effective administration of justice would only be achieved by granting the stay and allowing the Louisiana court to analyze its own state law.[13]

Moreover, because Obey is incorporated in Louisiana, maintains its principal place of business in Louisiana, appears to be a regionally based entity, and all relevant events took place in Louisiana – including the original sales agreement between Blue and New SSC – abstention is warranted.[14] Thus, the convenience of the state forum weighs heavily in favor of granting the stay.

Finally, as described by the Third Circuit, the factors detailed above are not exhaustive and the district court may rely on any additional factors it finds prudent. *See id.* The court today stresses that, because there is no federal law at issue and only complicated state contract construction law is relevant, the need to stay the action is heightened. The time sensitivity of the two proceedings is highlighted by both parties filing separate suits, as well as other filings, to secure title to the Additional Assigned

---

[12] This case is not akin to *Mann*, where both the trust and the contract at issue had connections to Delaware, rendering the district court "more familiar with Delaware law." *See Mann*, 2011 WL 446048, at *3.

[13] While there has not been direct evidence that litigating in this forum would disadvantage Obey, the court infers from the complicated nature of the contract claims that this case would be resolved more efficiently in Louisiana. The state court is better equipped to resolve these types of matters.

[14] The record before the court is not similar to *Mann*, wherein the defendant had sought dismissal of the state action under the doctrine of *forum non conveniens* in favor of the district court. *See Mann*, 2011 WL 446048, at *3.

Payments within months of one another.[15] A stay is the most "preferable course" at this juncture as "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 287 n.2.

Therefore, from the record presented, the court finds that because there are parallel proceedings, and other factors warrant it, the court must stay the litigation at bar. If the court did not deny the motion, it would be "gratuitously interfering" with the state court because of the presence of complex state contract issues. *See Wilton*, 515 U.S. at 283.

## VI. CONCLUSION

Despite not explicitly citing to it, Stone Street Trust's complaint, which seeks a declaratory judgment quieting title to property, falls under the DJA. DJA claims arise under the *Brillhart* abstention doctrine, not the *Colorado River* exceptional circumstances abstention doctrine. Under the *Brillhart* abstention doctrine, it would be judicially "vexatious" to maintain this suit while the state court case proceeds. *See Brillhart*, 316 U.S. at 495. For these reasons, defendant Obey's motion to stay proceedings in federal court is granted. An order shall issue.

---

[15] In this regard, it is prudent for the court to make sure that "procedural fencing, forum shopping, or gamesmanship is not rewarded." *See Mann*, 2011 WL 446048, at *3 (citing *NYLife*, 72 F.3d at 383). Because the litigation at bar was filed a mere two months after the Louisiana action, and because both proceedings deal with the ultimate ownership of the same property, it is likely that the present action is a defensive move on behalf of Stone Street Trust. *See Mann*, 2011 WL 446048, at *3.